Diana M. Torres (SBN 162284)
KIRKLAND & ELLIS LLP
333 South Hope St
Los Angeles, CA 90071
(213) 680-8400
(213) 680-8500
diana.torres@kirkland.com

Dale M. Cendali (*pro hac vice* to be filed)
Claudia Ray (*pro hac vice* to be filed)
Joshua Simmons (*pro hac vice* to be filed)
Jacob Victor (*pro hac vice* to be filed)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Fax: (212) 446-6460
dale.cendali@kirkland.com
claudia.ray@kirkland.com
joshua.simmons@kirkland.com
jacob.victor@kirkland.com

Attorneys for Plaintiff Drybar Holdings
LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| DRYBAR HOLDINGS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PETSMART INC., a Delaware corporation; FETCH . . . FOR PETS!; FETCH. . . FOR COOL PETS LLC, a New Jersey limited liability company; and DOES 1-10,<br><br>Defendants. | Case No.  8:17-cv-2224<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>**Jury Trial Demanded** |

Plaintiff Drybar Holdings LLC ("Drybar"), by and through its attorneys, for its Complaint against Defendants PetSmart, Inc. ("PetSmart"), Fetch . . . For Pets! and Fetch . . . For Cool Pets LLC (collectively, "Fetch"), and Does 1-10 alleges as follows:

## NATURE OF THE ACTION

1.     This case arises from Defendants' flagrant attempt to trade off of Drybar's trademark and trade dress for their own economic gain.

2.     Drybar offers innovative, attractive, and popular hair products and services, including its well-known dry shampoos and conditioners.  These products are the result of significant research combined with extensive brand-building and advertising efforts.  Drybar's products and services are praised by consumers, celebrities, and the press for their innovation and excellence.

3.     Upon information and belief, Fetch is in the business of making pet versions of famous and successful consumer products.  Fetch recently launched a line of "Barkbar" pet grooming products, including dry shampoos, which use a trademark and trade dress that are confusingly similar to those used by Drybar.

4.     Upon information and belief, in creating the Barkbar product line Fetch has attempted to coopt Drybar's valuable goodwill by willfully infringing Drybar's federally-registered DRYBAR trademark, which Drybar uses on a range of salon services and products.  There can be no doubt that Fetch selected the name BARKBAR to mimic Drybar's distinctive DRYBAR trademark.  Both marks are depicted in similar lower case serif-style font, as shown below.

       

5.     In addition, confusion is compounded as the word marks are presented in the context of similar overall packaging.  Among other things, Fetch uses a distinctive color scheme and matte finish similar to that of Drybar's products.  Fetch also copied Drybar's practice of using alcoholic beverage-inspired product names for its hair products.

6.     Not only does this exacerbate the trademark infringement, it also constitutes trade dress infringement.  As alluded to above, Fetch mimics Drybar's distinctive packaging in several ways:

- Fetch uses a similar pastel color palette;
- Fetch products have a similar matte finish;
- Fetch's "Barkbar" logo appears in a similar lowercase serif-style font;
- Fetch uses the similar design feature of generally depicting its product names in colors that are tonally similar to the overall package colors;
- Fetch uses a flat, simple icon of a dog that is similar to the flat, simple icon of a blow dryer used by Drybar on its products;
- Fetch uses a single horizontal line in the middle of its product descriptions;
- Fetch's aerosol products come in bottles that are the same shape as Drybar's aerosol products;
- Fetch's aerosol products use a metal rim, white actuator, and clear cap that are nearly identical to those used in Drybar's aerosol products.

There can be doubt that Fetch's packaging is designed to be confusingly similar to Drybar's distinctive trade dress used for its products, as shown in the image below juxtaposing Drybar and Fetch products.  This infringes Drybar's trade dress rights in its product and packaging designs.



7.     Fetch's blatant copying of Drybar's mark and packaging is likely to cause consumer confusion, mistake, and/or deceit as to the source, origin or association of its products and services.  This is particularly true given the similarity between the parties' respective marks and trade dress and the fact that both parties offer grooming products. In light of the strong goodwill that Drybar's DRYBAR trademark and trade dress have obtained throughout the United States, consumers easily could believe that Fetch, among other things, is an affiliate of Drybar when in fact there is no connection between them whatsoever.

8.     Adding insult to injury, upon information and belief, Fetch is well aware of the need for permission to use others' marks and related branding indicia for this type of derivative tie-in product, and thus usually obtains licenses from the brands that it uses to create its pet versions of consumer products.  By contrast, here Fetch deliberately launched a line of products designed to exploit the goodwill associated with Drybar's

trademark and trade dress without seeking, let alone obtaining, authorization from Drybar, in violation of both the law and Fetch's own prior practice.

9. Barkbar products are exclusively sold at PetSmart stores and PetSmart is also liable for trademark and trade dress infringement.

10. For these reasons, and as explained further below, Drybar seeks injunctive relief to stop Defendants' infringing activities, as well as monetary damages and attorneys' fees to compensate Drybar for the harm it has suffered as a result of Defendants' infringement.

## THE PARTIES

11. Plaintiff Drybar Holdings LLC is a company organized and existing under the laws of the State of Delaware with its principal place of business at 125 Technology Drive, Irvine, California, 92618.

12. Upon information and belief, Defendant PetSmart, Inc. is a Delaware corporation with a place of business at 19601 North 27th Avenue, Phoenix, Arizona 85027. Upon information and belief, PetSmart has 165 stores in California.

13. Upon information and belief, Defendant Fetch . . . For Pets! is an entity with a place of business at 1400 Broadway, New York, New York 10018.

14. Upon information and belief, Defendant Fetch . . . For Cool Pets LLC is a New Jersey limited liability company with a place of business at 115 Kennedy Drive, Sayreville, New Jersey 08872 and/or at 1400 Broadway, New York, New York 10018.

15. Upon information and belief, Defendant Fetch . . . For Pets! is a subsidiary, affiliate, or alias of Defendant Fetch . . . For Cool Pets LLC.

16. Drybar currently is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant Does 1 through 10, inclusive, or of any of them individually. Drybar therefore sues these Defendants by such fictitious names. Drybar will seek leave of Court to amend this Complaint when the identities of these Defendants are ascertained.

17.     Upon information and belief, Defendants have sold BARKBAR products throughout the United States both online and in retail stores, including in this District.

## JURISDICTION AND VENUE

18.     This action arises under the federal Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the related laws of the State of California.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  Further, this Court has supplemental jurisdiction over Drybar's state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to Drybar's federal claims.

19.     This Court has personal jurisdiction over Fetch and PetSmart and venue is proper in this district pursuant to 28 U.S.C. § 1391 because Drybar is located and is being harmed in this district, because, upon information and belief, Fetch and PetSmart conduct business and sell their products in this district, and/or because the activities about which Drybar complains have taken place and are continuing to take place in this district.

## FACTUAL ALLEGATIONS

### Drybar and Its Products

20.     Drybar is the owner of an acclaimed line of creative salons and hair products.  Drybar has over 88 salons across the United States, including 25 in Southern California.  Drybar products are sold at Sephora, Ulta and Nordstrom, in select Bloomingdales stores, in Drybar salons, and on Drybar's website.

21.     Since at least 2010, Drybar has used DRYBAR as a trademark and service mark in connection with its salons and hair care products.

22.     As noted above, Drybar uses a distinctive lowercase serif-style font when presenting its DRYBAR mark.

23.     Drybar products primarily appear in distinctive pastel-colored packaging with a matte finish.  In addition, many Drybar products are named after beverages, such as "Sparkling Soda," "Whiskey Fix," "Texas Tea," "Lemon Drop," "Money Maker," and "Triple Sec."

24.    Drybar is particularly known for its innovative approach to salons.  By focusing exclusively on "blowout" blow-drying services and emphasizing the customer experience, Drybar has created a brand valued by consumers for its standard of excellence.  Indeed, Drybar was named one of the "100 Brilliant Ideas of 2010" by *Entrepreneur Magazine*.[1]

25.    Drybar also has come to be well-known for its haircare products, in particular its dry shampoos and conditioners.  Drybar's DRYBAR-branded products have been featured by such television programs as *The Today Show*, *Good Morning America*, *Katie Couric*, *Access Hollywood*, *Entertainment Tonight*, as well as by magazines and newspapers such as *InStyle*, *Elle*, *Vanity Fair*, *Allure*, *Vogue*, *BusinessWeek*, *Bloomberg*, *The New York Times*, *Forbes*, *The Washington Post*, *The New Yorker*, *People*, *CNBC*, and *US Weekly*.  Drybar also was the subject of *The New York Times*-bestselling book, *The Drybar Guide to Good Hair for All*.  In addition, Drybar's DRYBAR-branded products have received numerous celebrity endorsements and have appeared in television shows and movies.  Drybar's services and products also have won numerous industry and consumer awards, including but not limited to *Nylon*'s 2017 "Best Round Brush" award; *Boston Magazine*'s 2017 "Best of Boston" award; *O Magazine*'s Fall 2017 "Beauty O-ward"; *Las Vegas Review Journal*'s 2017 "Best of Las Vegas" award; *NewBeauty*'s 2017 and 2016 "Choice Awards"; *Cosmetic Executive Women*'s  2016  "Hair-Spiration" award; *Total Beauty*'s 2016 "Editor's Pick" award; *Brides Magazine*'s 2014 "Best Hair Dryer" award; and *Ok! Magazine*'s 2013 award for "Hair Must-Haves."

26.    In addition to its core salon service and haircare product business, Drybar has undertaken a series of brand extensions into additional products such as blow dryers, curling wands, brushes and combs, hair clips, pillowcases, shower caps, apparel, scented candles, and tote bags.

---

[1]    https://www.entrepreneur.com/article/206722.

27.     The products and services offered, sold, and advertised in connection with the DRYBAR mark have generated substantial revenue.  *Buzzfeed* reported that Drybar's 2016 revenue was over $100 million.[2]

28.     Drybar also has expended significant amounts of money over the years advertising and promoting its products and services throughout the United States under the DRYBAR mark in various media and forms.

### Drybar's Trademarks and Trade Dress

29.     Drybar is the owner of various trademark registrations in the DRYBAR mark, including U.S. Trademark Registration Nos. 4,043,735; 4,354,273; 4,423,969; 4,442,715; 5,044,864; and 5,281,444.  Drybar's registrations include both its standard character mark as well as the stylized version of its logo.  Copies of the certificates of registration for this mark are attached hereto as **Exhibit A**.

30.     The registrations set forth in Exhibit A constitute *prima facie* evidence of Drybar's ownership of and exclusive rights to use the DRYBAR mark in connection with the good and services recited in the registrations.

31.     Drybar also owns and has maintained common law rights to the DRYBAR mark by virtue of its *bona fide* use in commerce of the mark throughout the United States.

32.     Drybar has established valuable trademark rights and goodwill in the DRYBAR mark by virtue of its continuous use since 2010 and registration of that trademark, the substantial promotional and marketing efforts under that trademark, the expenditure of vast sums in advertising and promotional activities under that trademark, the substantial sales of products and services offered under that trademark, and third-party acclaim and attention.

33.     Since at least 2012, Drybar has used an inherently distinctive and non-functional trade dress packaging for its products (the "Pastel Trade Dress").  This

---

[2]   https://www.buzzfeed.com/sapna/hot-air-millionaires-how-drybar-became-a-100-million-busines?utm_term=.pcYebxgNY#.tn7ZQ9zXn.

inherently distinctive trade dress consists of packaging with pastel colors and having a matte finish.  The top of the bottle contains a simple, flat design of a blow dryer shown from the side.  Drybar's DRYBAR mark appears in lowercase letters in a serif-style font on the front of the bottle towards the bottom.  The product name appears in the center of the package in a color that is generally tonally similar to the packaging color (or, in the case of yellow packaging, a soft grey color).  A single line or band appears in the middle of the product description.  Examples of the Pastel Trade Dress include the following:



34.     Drybar's products sold using the Pastel Trade Dress have generated significant revenue.  Drybar has invested substantial sums in advertising and promotional expenditures for these products.

35.     As a result of Drybar's efforts, the Pastel Trade Dress has become well and favorably known as indicating haircare products manufactured by Drybar.  The Pastel Trade Dress has acquired secondary meaning in the eyes of consumers.

### **Fetch's Business Model**

36.     Upon information and belief, Fetch is the manufacturer and retailer of various products for pets, in particular grooming products.

37.     Upon information and belief, Fetch's primary business model consists of using trademarks associated with well-known brands, such as BURT'S BEES and ARM & HAMMER, to market versions of the products made by these well-known brands for use by or for pets.  Fetch's website, www.Fetch4Pets.com, explains that "Fetch has been the leading pet product manufacturer bringing major [consumer packaged goods] brands to the pet industry since 2008. We develop cross category pet product lines based on retail and market demand as well as industry trends."

38.     Upon information and belief, examples of the pet-oriented brand extensions created by Fetch include the following:



39.     Upon information and belief, Fetch typically obtains a license before using the trademark(s) or trade dress of the brand for which it creates pet-oriented products.

40.     Fetch's promotional materials describe some of its licensing "success stories," as show below.  For example, Fetch describes "work[ing] with" the Clorox Company to develop its line of Fresh Step and Glad branded pet products.

## SUCCESS
### STORIES

 **PET HEAD**
Fetch's first pet license in 2008. We took the human haircare brand, Bed Head, and launched Pet Head, turning it into an $8MM business. The program did so well, it lead to our next big license! Cue the bees!

 **BURT'S BEES**
Burt's Bees Natural Pet Care launched at pet specialty and in just 1 year, we had a multi-million dollar pet brand. Business was so good, we expanded into mass. Specialty got mad and dropped Burt's. One year without the was one year too long and we were back in despite distribution across all channels. We now have multiple extensions under the Burt's Bees brand and continue to grow. More to come in 2018!

 **ARM & HAMMER**
PetSmart's biggest dental brand. No other dental brand has had more in line space. We introduced dental treats and toys last year across all channels and that now have placement at over 40 retailers. An A&H dental packaging refresh will launch this year and will be available for the first time ever in the mass channel.

 **CHI**
If you treat yourself to salon quality products, your pet obviously needs them as well. CHI For Dogs launched at PetSmart with over 30 SKU's in 2015. It was so successful that the PetSmart salon wanted a piece and introduced the CHI For Dogs salon package. We're introducing 10+ new SKU's this year and bringing cat's into the mix. Meow!

 **FRESH STEP & GLAD**
We couldn't wait to work with The Clorox Company. We begged and we pleaded for Glad and Fresh Step and we don't regret it! Glad doggy waste bags make so much sense they can't be denied and the dog training pads include innovative carbon activate technology with no leaks and no yellow spots. They're like magic. Fresh Step litter box maintenance and accessories have made a lot of cat people very happy to get some love. We're already introducing new SKU's for both lines and expanding every day in food, drug and mass.

 **PRIVATE LABEL**
Fetch has partnered with major national retailers including PetSmart, Petco, Target, Walmart and Meijer on private label development across multiple pet categories. At PetSmart alone, Fetch owns 80% of the wet grooming goods with Top Paw, Great Choice, GNC, CHI and Burt's Bees. Grooming is surely our bread and butter.

### **Fetch's Infringement of Drybar's Trademark and Trade Dress**

41.     Unlike the other brand extensions that Fetch has created, Fetch does not have a license to use Drybar's trademark or trade dress.

42.     Nevertheless, in or about mid-2017, Fetch deliberately launched a line under the BARKBAR mark using branding and packaging that is confusingly similar to Drybar's DRYBAR mark and Pastel Trade Dress:





43.     Upon information and belief, the BARKBAR product line currently is sold nationwide exclusively at PetSmart stores and on PetSmart's website.

44.     Upon information and belief, Fetch has not registered any trademarks or trade dress related to the Barkbar product line.

45.     The Barkbar products all are sold under a BARKBAR mark that is confusingly similar to Drybar's DRYBAR mark, both with respect to the use of the word "bar" and in the use of a lowercase serif-style font and pastel coloring that is nearly identical to the font and color scheme that Drybar uses on its products.  Upon information and belief, Fetch's use of a similar mark depicted in a similar manner reflects a deliberate effort to evoke Drybar's products and trade off its goodwill in its DRYBAR mark.

46.     Upon information and belief, Fetch's BARKBAR product names, such as "Peach Bellini," "Pina Colada," "Lemon Drop," and "Red Sangria," also are designed to evoke Drybar's use of beverage-themed names for its products.  Indeed, Fetch's Lemon Drop dry shampoo has the same name as Drybar's Lemon Drop detangling hair brush.

47.      Fetch's BARKBAR products also use packaging that is confusingly similar to Drybar's Pastel Trade Dress (the "Infringing Packaging").

12

48.     The Infringing Packaging uses a variety of pastel colors and a matte finish, just like the Pastel Trade Dress.  The top of Fetch's Infringing Packaging contains a simple and flat design of a dog, similar to the simple and flat design of a blow dryer contained in the Pastel Trade Dress.  The BARKBAR name appears in lowercase letters in a serif-style font, like the DRYBAR mark in the Pastel Trade Dress.  Like the Pastel Trade Dress, the Infringing Packaging generally depicts the product name using a color that is tonally similar to the packaging color.  Even in the few instances in which the Pastel Trade Dress uses a tonally distinct color, such as the grey text on yellow packaging used in Drybar's "Southern Belle" products, the Infringing Packaging utilizes the same grey-on-yellow packaging, as shown below.  Additionally, as shown below, aerosol versions of the Infringing Packaging utilize the same bottle shape, metal band, white actuator, and clear cap as the aerosol version of the Pastel Trade Dress.  The net effect of the Infringing Packaging is to make it seem as though BARKBAR products are the latest brand extension undertaken by Drybar.  Fetch thus has unilaterally usurped Drybar's goodwill in a false and misleading fashion.

   

**Defendants' Activities Will Harm Drybar**

49.     Defendants' use of the BARKBAR mark and the Infringing Packaging has damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Drybar, including its reputation and the goodwill associated with the the DRYBAR mark and Pastel Trade Dress.  Defendants' use of the BARKBAR mark and the Infringing Packaging also is detrimental to the public's interest in being free from confusion as to the source, sponsorship, and/or affiliation of Fetch's products and services.

50.     Defendants' use of the BARKBAR mark and the Infringing Packaging is likely to cause confusion, mistake, and/or deception as to the source or origin of Defendants' products and services and commercial activities, and is likely to falsely suggest a sponsorship, connection, license, and/or association of Defendants and/or their products and services with Drybar and/or its products and services.  Drybar, moreover, has no assurances that Defendants' products are of the same quality that Drybar's customers have come to expect.  Thus, Drybar's hard-earned goodwill is at the mercy of Defendants because consumers who are unhappy with the quality of Defendants' products might blame Drybar or assume that Drybar's products are also deficient.

51.     On August 15, 2017, Drybar sent Fetch a letter demanding that Fetch immediately cease its use of the BARKBAR mark and the Infringing Packaging. PetSmart was copied on this letter.  The letter is attached hereto as **Exhibit B**.

52.     Fetch denied infringing Drybar's intellectual property in a letter sent on August 24, 2017.

53.     On or about September 7, 2017, Robert Stone of Excel Branding sent Drybar an e-mail offering to "mediate" the dispute between Drybar and Fetch and proposing that Fetch become a licensee for Drybar.  Stone also sent Drybar a PDF on behalf of Fetch in an email on September 22, 2017, explaining Fetch's prior efforts to use well-known consumer brands in marketing pet products.  The PDF also proposed a line of Drybar-branded products to be sold by Fetch.  The PDF is attached hereto as **Exhibit C**.

54.     After meeting with representatives of Fetch on November 2, 2017, Drybar determined that it had no interest in accepting Fetch's licensing proposal.  Defendants have not ceased their use of the BARKBAR mark or Infringing Packaging.

55.     Defendants' infringing conduct is continuing and likely to continue, constituting an ongoing and growing threat to Drybar and its valuable DRYBAR mark and Pastel Trade Dress, and the goodwill associated therewith.  Upon information and belief, Fetch intends to launch additional products under the infringing BARKBAR mark. Indeed, as shown in Exhibit C, the proposed products in Fetch's September 2017 licensing pitch included products such as canine moisturizers and conditioners.

56.     Upon information and belief, Fetch was aware of Drybar's prior rights in the DRYBAR mark and the Pastel Trade Dress before selecting and using the BARKBAR mark and the Infringing Packaging, and has acted willfully in creating, marketing and selling its BARKBAR products despite knowing full well that it had never sought, let alone obtained, Drybar's authorization before launching its BARKBAR product line.

57.     Upon information and belief, PetSmart was aware of Drybar's prior rights in the DRYBAR mark and the Pastel Trade Dress and has acted in willfully in selling BARKBAR products despite knowing that these products infringe Drybar's rights.

## COUNT I

### Trademark Infringement Under Section 32(a) of the Lanham Act

### (15 U.S.C. § 1114(a))

58.     Drybar repeats and realleges the allegations set forth in Paragraphs 1-57 above as if fully set forth herein.

59.     Without Drybar's consent, Defendants have used and continue to use in commerce the infringing BARKBAR mark, as described above, in connect with the offering, sale, and advertising of grooming products, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60.     Upon information and belief, Defendants had actual and/or constructive knowledge of Drybar's rights prior to using their infringing BARKBAR mark.  Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

61.     As a direct and proximate result of the actions of Defendants alleged above, Drybar has been damaged and will continue to be damaged.

62.     Drybar has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

## COUNT II

**Trademark Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A))**

63.     Drybar repeats and realleges the allegations set forth in Paragraphs 1-62 above as if fully set forth herein.

64.     The actions described above of Defendants are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the products and services and commercial activities of Defendants, and thus constitute trademark infringement, false designation of origin, and unfair competition with respect to the DRYBAR mark, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

65.     Upon information and belief, Defendants had actual and/or constructive knowledge of Drybar's rights prior to using their infringing BARKBAR mark.  Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

66.     As a direct and proximate result of the actions of Defendants alleged above, Drybar has been damaged and will continue to be damaged.

67.     Drybar has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement, false designation of origin, and unfair competition.

## COUNT III

### Trade Dress Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act
### (15 U.S.C. § 1125(a)(1)(A))

68.     Drybar repeats and realleges the allegations set forth in Paragraphs 1-67 above as if fully set forth herein.

69.     Without Drybar's consent, Defendants used and continue to use in commerce packaging that is confusingly similar to Drybar's inherently distinctive and non-functional Pastel Trade Dress, as described above, in connect with the offering, sale, and advertising of grooming products.  These actions are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of the products and services and commercial activities of Defendants, and thus constitute trade dress infringement, false designation of origin, and unfair competition with respect to the Pastel Trade Dress, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

70.     Upon information and belief, Defendants had actual and/or constructive knowledge of Drybar's rights prior to using their infringing Barkbar product packaging. Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

71.     As a direct and proximate result of the actions of Defendants alleged above, Drybar has been damaged and will continue to be damaged.

72.     Drybar has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement, false designation of origin, and unfair competition.

## COUNT IV

**Unfair Competition**

**(Cal. Bus. & Prof. Code § 17200)**

73.     Drybar repeats and realleges the allegations set forth in Paragraphs 1-72 above as if fully set forth herein.

74.     In the course of conducting their business, Defendants' conduct—specifically, Defendants' use of confusingly similar variations of Drybar's DRYBAR mark and Pastel Trade Dress in a manner that is likely to cause consumer confusion—constitutes unfair competition and unfair business practice in violation of California Business and Professions Code § 17200.

75.     Defendants' actions, as alleged above, are unlawful, unfair and/or fraudulent within the meaning of California Business and Professions Code § 17200.

76.     Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

77.     As a direct and proximate result of the actions of Defendants alleged above, Drybar has suffered economic injury and will continue to suffer economic injury.

78.     Drybar has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of unfair competition.


## COUNT V

**Trademark and Trade Dress Infringement and**

**Unfair Competition**

**(California Common Law)**

79.     Drybar repeats and realleges the allegations set forth in Paragraphs 1-78 above as if fully set forth herein.

80.     The actions described above of Defendants constitute trademark infringement, trade dress infringement, and unfair competition under the common law of California.

81.     Upon information and belief, Defendants had actual and/or constructive knowledge of Drybar's rights prior to using their infringing BARKBAR mark and infringing product packaging.  Upon information and belief, the actions of Defendants described above have at all times relevant to this action been willful.

82.     As a direct and proximate result of the actions of Defendants alleged above, Drybar has been damaged and will continue to be damaged.

83.     Drybar has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement and unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Drybar prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

1.      An Order declaring that Defendants' use of the BARKBAR mark infringes Drybar's DRYBAR mark, that Defendants' use of packaging that is confusingly similar to Drybar's packaging infringes Drybar's Pastel Trade Dress, and that Defendants' actions constitute unfair competition under federal and/or state law, as detailed above;

2.      An injunction permanently enjoining Defendants and their employees, officers, directors, principals, subsidiaries, parents, affiliates, related companies, brokers, agents, and all persons in active concert or participation with any of them:

A.      From using or registering to use the BARKBAR mark and any designs, logos, or marks that are confusingly similar to the DRYBAR mark;

B.      From using or registering to use any trade dress that is confusingly similar to the Pastel Trade Dress; and

C.      From representing by any means whatsoever, directly or indirectly, that Defendants, any products or services offered by Defendants, or any activities

undertaken by Defendants, are associated or connected in any way with Drybar;

3.     An Order directing Defendants to recall and/or destroy all goods, products, promotional materials or advertisements bearing the BARKBAR mark and/or any other designs, logos, or marks that are confusingly similar to the DRYBAR mark, and directing Defendants to recall and/or destroy all goods and products featuring packaging that is confusingly similar to the Pastel Trade Dress;

4.     An Order directing Defendants to file with this Court and serve on Drybar's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the Court's injunction;

5.     An Order requiring Defendants to account for and pay to Drybar any and all profits arising from the foregoing acts of infringement, false designation of origin, and unfair competition;

6.     An Order requiring Defendants to pay Drybar compensatory damages in an amount as yet undetermined caused by the foregoing acts of infringement, false designation of origin, and unfair competition, and trebling such compensatory damages for payment to Drybar in accordance with 15 U.S.C. § 1117 and other applicable laws;

7.     An Order requiring Defendants to pay Drybar all types of monetary remedies available under Cal. Bus. & Prof. Code § 17200 in amounts as of yet undetermined caused by the foregoing acts of unfair competition;

8.     An Order requiring Defendants to pay Drybar's costs and attorney's fees in this action pursuant to 15 U.S.C. § 1117, Cal. Bus. & Prof. Code § 17200, and any other applicable laws; and

9.     Other relief as the Court may deem appropriate.

## **JURY DEMAND**

Drybar demands a jury trial on all issues so triable in this action.

1    DATED:  December 21, 2017          Respectfully submitted,

2                                       /s/ Diana M. Torres

3                                       Diana M. Torres (SBN 162284)
                                        KIRKLAND & ELLIS LLP
4                                       333 South Hope St
                                        Los Angeles, CA 90071
5                                       (213) 680-8400
                                        (213) 680-8500
6                                       diana.torres@kirkland.com

7                                       Dale M. Cendali (*pro hac vice* to be filed)
                                        Claudia Ray (*pro hac vice* to be filed)
8                                       Joshua Simmons (*pro hac vice* to be filed)
                                        Jacob Victor (*pro hac vice* to be filed)
9                                       KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
10                                      New York, New York 10022
                                        Telephone: (212) 446-4800
11                                      Fax: (212) 446-6460
                                        dale.cendali@kirkland.com
12                                      claudia.ray@kirkland.com
                                        joshua.simmons@kirkland.com
13                                      jacob.victor@kirkland.com

14                                      *Attorneys for Plaintiff Drybar Holdings LLC*

15

16

17

18

19

20

21

22

23

24

25

26

27

28